**UNITED STATES of America**

v.

**Frederick JACKSON, Appellant.**

No. 86–3029.

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1987.

Decided July 17, 1987.

Angela Donovan (Student Counsel), with whom Steven H. Goldblatt (Appointed by this Court), Samuel Dash, Washington, D.C., and Ellen Pearlman, Milwaukee, Wis., were on the brief for appellant.

J. Ramsey Johnson, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Zinora M. Mitchell, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before RUTH B. GINSBURG, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH B. GINSBURG, Circuit Judge:

On July 12, 1985, appellant Frederick Jackson was apprehended by officers of the District of Columbia Metropolitan Police Department in an apartment in southeast Washington, D.C. in possession of two .38 caliber pistols. An indictment was subsequently handed down charging Jackson, who had been convicted of bank robbery in 1973, with possessing a firearm in violation of 18 U.S.C. App. § 1202(a) (Supp. 1984), which provides that any person who "has been convicted ... of a felony ... and who receives, possesses, or transports in commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." In addition, the indictment charged Jackson with violating three provisions of the District of Columbia Criminal Code: D.C. CODE ANN. §§ 22–3204 (1981) (carrying a pistol without a license), 6–2311(a) (possession of an unregistered firearm), and 6–2361 (unlawful possession of ammunition).

After trial in the district court, a jury convicted Jackson on all counts. At his sentencing hearing, the government contended that Jackson's punishment on the federal count should be "enhanced" pursuant to the Armed Career Criminal Act of 1984 (ACCA),[1] which amended 18 U.S.C. App. § 1202(a) by adding the following sentence:

In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions ... for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years[.]

It is undisputed that Jackson has three prior convictions for robbery or burglary; the district judge accordingly sentenced Jackson to a prison term of twenty years on the federal count. On the remaining counts, the court suspended imposition of sentence and placed Jackson on probation for five years following his release from incarceration.

Jackson raises two contentions on appeal. First, he argues that the ACCA defines a separate indictable offense—*i.e.*, possession of a firearm by a thrice-convicted felon—and cannot, therefore, be used to enhance the penalties set forth elsewhere in section 1202(a). Second, he asserts that there was insufficient evidence of non-licensure and nonregistration for the D.C. offenses of which he was convicted, owing to a flawed search of the public firearm records. For the reasons set forth below, we reject both contentions and affirm Jackson's conviction and sentence.

## I.

■ The full text of 18 U.S.C. App. § 1202(a) is set forth in the margin.[2] The

---

1. Pub.L. No. 98–473 § 1802, 98 Stat. 2185.

2. Receipt, possession, or transportation of firearms

    Persons liable; penalties for violations
    (a) Any person who—
    (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
    (2) has been discharged from the Armed Forces under dishonorable conditions, or
    (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
    (4) having been a citizen of the United States has renounced his citizenship, or
    (5) being an alien is illegally or unlawfully in the United States,
    and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.
    18 U.S.C.App. § 1202(a) (Supp.1984).
    Effective November 15, 1986, 18 U.S.C.App. § 1202(a)'s first sentence has been incorporated into 18 U.S.C. § 922(g), while the ACCA provision has been incorporated into 18 U.S.C.

second sentence of that provision ("In the case of a person ... under this subsection.") was added as part of the ACCA in 1984. The federal count of Jackson's indictment alleged only possession of a firearm and a single prior felony conviction; [3] by the terms of section 1202(a), this conduct subjected Jackson to a maximum penalty of two years in prison. Jackson's other felony convictions were not alleged in the indictment, nor were they introduced in evidence at his trial. If, as defendant contends, the second sentence of section 1202(a) defines an offense separate from the offense defined by the preceding sentence, Jackson's twenty-year sentence cannot stand, for a defendant cannot be convicted and sentenced under a statutory provision under which he has not been indicted. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Haldeman*, 559 F.2d 31, 123 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

The government, however, views the ACCA provision as merely "enhancing" the otherwise applicable sentencing provisions of section 1202(a). By that interpretation, no separate indictment is required: once a defendant has been convicted under section 1202(a), the sentencing judge must apply the enhanced penalties provided for in the ACCA upon proof of three prior robbery or burglary convictions.

The courts of appeals that have considered this issue have divided. In *United States v. Davis*, 801 F.2d 754 (5th Cir.1986), the Fifth Circuit, adopting the view pressed here by Jackson, held that the ACCA is "not merely a sentence-enhancement provision but creates a new offense," *id.* at 755, so that defendants not indicted under the ACCA could not be sentenced according to

its terms. *Id.* at 756. Two circuits have taken the government's view of the ACCA as a sentence-enhancer. *United States v. Hawkins*, 811 F.2d 210 (3d Cir.1987); *United States v. Gregg*, 803 F.2d 568 (10th Cir.1986).

As our sister courts, and the parties before us, have recited, resolution of this question of statutory interpretation turns on the intent of Congress, *see Hawkins*, at 218; *Davis*, 801 F.2d at 755, as to which our primary guide is the language of the statute itself. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). As courts often encounter, however, the statutory language we are obliged to construe is not free of ambiguity. The Third Circuit, for example, observed that the ACCA provision merely "specifies one of the preceding classes of persons [enumerated in section 1202(a)(1)–(5)] for different treatment. It does not stand on its own, but as an expansion of the preceding provision." *Hawkins*, at 219. The *Hawkins* court further noted that "the inclusion of the [ACCA] into the same paragraph as the previously enacted section 1202(a)(1), with no division into separate numbers or letters, suggests treatment of the contents as a single offense." *Id.*

The Fifth Circuit, on the other hand, pointed to the absence from the ACCA of certain "common indicia of sentence-enhancement provisions," *e.g.*, an explicit reference to a conviction under section 1202(a), procedures for a sentencing hearing, a penalty derived as a multiplier of another offense, or a title indicating that it is a sentence-enhancement provision. *Davis*, 801 F.2d at 755–56.

§ 924(e)(1). Firearms Owners' Protection Act, Pub.L. No. 99–308, §§ 102(6), 104(a)(4), 106 (1986). Jackson concedes, and we find it evident, that § 924(e)(1), as currently framed, "fits the pattern of an enhancement provision." *See* Reply Brief of Appellant at 4 n. 3. Thus, Congress has now clearly, albeit prospectively, stated its intent to furnish a sentencing provision, and not a provision defining a separate indictable offense.

3. Count One of Jackson's indictment read:
    On or about July 12, 1985, within the District of Columbia, Frederick Jackson, having been convicted on July 24, 1973 by the United States District Court of the District of Columbia, of Bank Robbery, a felony, did knowingly receive, possess and transport in commerce and affecting commerce a firearm, that is, a pistol. (Violation of Title 18, U.S. Code, Section 1202(a)(1) (Appendix).)

Both of these observations have force. Pointing as they do in opposite directions, however, neither appears to us conclusive on the question of legislative intent. *Compare Davis*, 801 F.2d at 756 (the statutory language, being unambiguous, disposes of the question of legislative intent) *with Hawkins*, at 219 (the omissions on which the *Davis* court relied are "relevant but not conclusive"). The language and structure of section 1202(a) are similar to other statutory provisions that have been construed as sentence enhancers. For example, 21 U.S.C. § 848, as framed when the Supreme Court considered the measure in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), read in relevant part:

Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, ... and to the forfeiture prescribed in [21 U.S.C. § 848(a)(2)]; *except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment....*

21 U.S.C. § 848(a)(1) (1982) (emphasis added). In *Garrett*, the Supreme Court construed the italicized provision as the statutory "recidivist provision, providing for twice the penalty for repeat violators of this section," *id.* at 781, 105 S.Ct. at 2413, and further noted that it "contains language that is typical of that sort of [recidivist] provision." *Id.* at 782, 105 S.Ct. at 2413. The differences between the language utilized in 21 U.S.C. § 848 and the ACCA [4] are not so substantial as to establish congressional intent to define a separate offense in the latter provision.

In light of these textual ambiguities, we must look elsewhere for clues to the legislators' intent. The legislative history of the ACCA, while itself not free of ambiguity, offers more support for the government's position than for Jackson's. As originally introduced in the House and Senate, the ACCA clearly and unambiguously created a new federal offense. *See* S. 52, 98th Cong., 1st Sess. § 2 (1983); H.R. 1627, 98th Cong., 1st Sess. § 2 (1983); *see also* S. REP. NO. 190, 98th Cong., 1st Sess. at 3 (1983) ("The bill creates a new Federal crime of carrying a firearm during the commission of a robbery or a burglary ... where a defendant has two prior felony convictions for robbery or burglary"); *id.* at 4 ("[S. 52] creates a separate Federal offense [and] those to whom the Act is applied would be indicted and tried like other Federal defendants").

This approach, however, was abandoned in the bill finally enacted, due largely to congressional concern over the "lack of need for Federal prosecutions of local robberies and burglaries even if the defendants were 'career criminals'." H.R. REP. NO. 1073, 98th Cong., 2d Sess. at 4 (1984). Accordingly, a substitute bill—H.R. 6248, 98th Cong., 2d Sess. (1984)—was adopted by the House Judiciary Committee, and it was this bill that formed the basis for the ACCA as finally enacted into law. The approach taken by H.R. 6248 was to " 'enhanc[e]', *an existing Federal crime"—i.e.,* 18 U.S.C. § 1202(a)—"with H.R. 1627–type sanctions." H.R. REP. NO. 1073 at 5 (emphasis added). As the Report further explained:

Under this approach, if the local authorities arrest a three-time loser in possession of a gun ... and can convince the U.S. Attorney that circumstances warrant prosecution *under the enhanced*

---

**4.** Section 848 refers to a person engaging in "such activity"—*i.e.*, the "continuing criminal enterprise" activity identified in the preceding clause—and to prior convictions "under this section." By contrast, the ACCA repeats the elements of the offense—"receiv[ing], possess[ing], or transport[ing] ... any firearm"—and refers to prior convictions for "robbery or burglary." *See supra* note 1. The first difference is of no

consequence; the drafters of the ACCA could have substituted the words "such activity" with no change in the meaning of the provision. The second distinction merely reflects the fact that the ACCA is not a typical recidivist provision, enhancing the penalties for subsequent convictions for a single offense. In all other respects, the language and structure of the two provisions are identical.

*penalty provisions of this bill,* the mandatory 15–year penalty is available.

*Id.* (emphasis added). Similar sentiments were voiced during the floor debates by the two sponsors of the ACCA:

> This bill would *enhance the sanctions* of 18 U.S.C.App. section 1202(a) with a 15–year minimum sentence if the defendant has been convicted three times of felonies for robbery or burglary.

130 CONG.REC. H. 10,550 (daily ed. Oct. 1, 1984) (statement of Rep. Hughes) (emphasis added).

> *This bill would create no new Federal crime.* Under present section 1202(a), possession of a firearm by a convicted felon is already a Federal crime, with a maximum prison sentence of two years. This title *would simply provide for a stiffer sentence for career criminals.*

130 CONG.REC. S. 13,080 (daily ed. Oct. 4, 1984) (statement of Sen. Specter) (emphasis added); *see also Hawkins,* at 219 (quoting other statements in floor debates to the same effect).

Finally, any doubts concerning Congress' intent still lingering after review of this legislative history [5] can be put to rest by reference to one additional consideration. The construction of the ACCA urged upon us by Jackson would require the government to place evidence of a defendant's three prior felony convictions before the jury in any proceeding under the ACCA. The inherently prejudicial nature of this kind of evidence is well known. *See United States v. Foskey,* 636 F.2d 517, 523

(D.C.Cir.1980) (noting the "inherently damaging nature of bad acts evidence"); *United States v. Bailleaux,* 685 F.2d 1105, 1109 (9th Cir.1982) (the "danger that defendants will be convicted because they have previously committed a serious criminal offense rather than because ... they are guilty of the offense for which they are being tried ... exists whenever a jury is advised of the fact of a prior conviction"); *see also Spencer v. Texas,* 385 U.S. 554, 560–63, 87 S.Ct. 648, 652, 17 L.Ed.2d 606 (1967) (notwithstanding that evidence of prior crimes "is generally recognized to have potentiality for prejudice," state recidivist statute under which such evidence is presented to the jury does not violate fourteenth amendment); *cf.* F.R.E. 404(b) (evidence of other crimes is "not admissible to prove the character of a person in order to show that he acted in conformity therewith").

A strong policy of avoiding the introduction of this potentially prejudicial evidence in criminal trials can be discerned in both congressional reluctance to make a prior criminal conviction an element of a criminal offense [6] and the manner in which recidivist or "habitual offender" statutes are often drafted to insure that this evidence is kept from the jury's view.[7] Lamentably, the ACCA, as initially composed, *see supra* note 2, was not meticulously drafted; however, absent any convincing evidence, in either the text, structure, or legislative history of the ACCA, that Congress intended to deviate from this general policy, we decline to adopt Jackson's proffered interpre-

---

5. The section-by-section analysis of H.R. 6248 in the House Report contains the following comment:

> Section 2 amends 18 U.S.C. App. § 1202(a) by *adding a new offense* proscribing any felon who has been convicted previously of three felonies for robberies or burglaries (either Federal or State) from receiving, possessing, or transporting in commerce or affecting commerce any firearm.

H.R. REP. No. 1073, 98th Cong., 2d Sess. at 6 (1984) (emphasis added). This is the only comment in the legislative history squarely supporting Jackson's interpretation of the statute.

6. At oral argument, government counsel stated that he was aware of no other federal statute—with the obvious exception of § 1202(a)(1) itself—in which prior criminal convictions are elements of another criminal offense to be

proved before the jury; Jackson's counsel cited no other provision of the § 1202(a)(1) genre; and our review of the pertinent U.S. Code sections uncovered no other prescription resembling § 1202(a)(1).

7. For example, under 18 U.S.C. § 3575, a defendant's prior convictions may be used to establish "dangerous special offender" status for the purpose of enhancing the defendant's penalty in the event of a subsequent felony conviction. That section provides that "[i]n no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, [or] be disclosed to the jury[.]" *Id.* § 3575(a). Identical language appears in 21 U.S.C. § 849(a), the sentencing provision for "dangerous special drug offenders."

tation.[8] We hold, therefore, that the district judge properly considered Jackson's prior convictions in enhancing his sentence under section 1202(a)(1).

## II.

The arresting officers apprehended Jackson at apartment number 3 in a building located at 2707 Shipley Terrace in Washington, D.C. This apartment was the residence of Jackson's estranged wife, Cinda Jackson, and their eight year old daughter; according to the testimony of the custodian of tenant records, the defendant's name did not appear on the apartment lease, and Mrs. Jackson further testified that the defendant had never been in the apartment prior to the date of his arrest.

To convict Jackson on the three non-federal counts charged in the indictment, the government was required to prove that Jackson was not licensed to carry firearms and that the two pistols recovered in the Shipley Terrace apartment were not registered in his name. To do this, certificates were introduced into evidence showing that a "diligent search" of the Metropolitan Police Department firearm records had turned up no registrations or licenses in the name of Frederick Jackson at the Shipley Terrace address. Jackson now contends that this records search was fatally flawed inasmuch as Jackson did not reside at that address; therefore, he continues, the government's evidence was insufficient to convict him of the offenses charged.

■ Although Jackson's counsel unsuccessfully objected to the introduction of these certificates into evidence, he did not move "for judgment of acquittal at the close of the evidence offered by the government." FED.R.CRIM.P. 29(a). Absent such a motion, "contentions of insufficient evidence made by appellants tried before juries will be considered only to prevent manifest miscarriage of justice." *United States v. Baber*, 447 F.2d 1267, 1270 n. 8 (D.C.Cir.1971); *see also United States v. McCray*, 433 F.2d 1173, 1175 n. 2 (D.C.Cir. 1970) (only a finding of "plain error," FED. R.CRIM.P. 52(b), would allow appellate court to overturn jury verdict on grounds of insufficiency of evidence); *cf. Jackson v. Virginia*, 443 U.S. 307, 317 n. 10, 99 S.Ct. 2781, 2788 n. 10, 61 L.Ed.2d 560 (1979) (noting the "settled practice of testing evidentiary sufficiency through a motion for judgment of acquittal and a post verdict appeal from the denial of such a motion"). *See generally* 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 469 (1982).

■ We find no "manifest injustice" in this case. Jackson has not suggested, here or in the district court, that a search using Jackson's correct address would have uncovered any exculpatory license or registration record, and we note further that Jackson's prior convictions would have made it unlawful for him to own, possess, or register a pistol. *See* D.C. CODE ANN. §§ 22–3202 and 6–2313(a)(2) (1981). We therefore refuse to disturb the district court's entry of judgment against Jackson on the nonfederal counts.

---

**8.** *Government of Virgin Islands v. Castillo*, 550 F.2d 850 (3d Cir.1977) is instructive. Section 2253(a) of the Virgin Islands Code provides for a maximum two year sentence for any person convicted of unauthorized possession of a firearm, "except that if such person shall have been convicted of a felony ... then such person shall be ... imprisoned not more than 5 years." *Castillo*, 550 F.2d at 852 n. 2. In *Castillo* the government took the position urged upon us by Jackson in the instant proceeding, arguing that "because section 2253(a) provides a stiffer maximum penalty for offenders who have prior felony convictions, the prior conviction was an element of the offense that had to be proved." *Id.*

at 852. The court disagreed, reversing defendant's conviction on the ground that admission of evidence of defendant's prior conviction at trial may have had "a significant prejudicial effect on the jury." *Id.* at 855. In holding that section 2253 was properly considered a penalty-enhancement provision, the court looked to the Virgin Islands "habitual offender" provisions, which are similar to the federal statutes cited *supra* at note 7, and found legislative "concern with restricting consideration of the impact of prior convictions to the sentencing judge—thereby keeping knowledge of them from the jury." *Id.* at 854 n. 7.

## CONCLUSION

For the reasons stated, we affirm the judgment from which this appeal is taken.[*]

*It is so ordered.*

---

[*] The court notes with appreciation the unusually high quality of the presentations in this case, both by counsel appointed to represent Jackson, and by the government.